(No. 106798.—

NEWTON TRACTOR SALES, INC., Appellant, v. KUBOTA TRACTOR CORPORATION *et al.*, Appellees.

*Opinion filed April 2, 2009.*

James Richard Myers and Larry L. LeFevre, of LeFevre Oldfield Myers Apke & Payne Law Group, Ltd., of Vandalia, for appellant.

David G. Lubben, of Davis & Campbell L.L.C., of Peoria, for appellees.

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Plaintiff-appellant, Newton Tractor Sales, Inc. (Newton), brought suit against defendants, Kubota Tractor Corporation and Michael Jacobson, a local Kubota representative (collectively, Kubota) on counts of promissory estoppel, common law fraud, and negligent misrepresentation. The circuit court of Fayette County granted summary judgment in favor of Kubota on all three counts. The appellate court affirmed. 382 Ill. App. 3d 1176. Newton then filed a petition for leave to appeal, which we allowed pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315(a)). On appeal we are asked to determine whether promissory estoppel is a recognized cause of action in Illinois and, if so, whether Newton has sufficiently established a genuine issue of material fact so as to survive Kubota's motion for summary judgment. For the reasons set forth below, we agree with Newton that promissory estoppel is a recognized cause of action in Illinois, reverse the circuit and appellate courts' judgments, and remand the cause for further proceedings.

## BACKGROUND

In 2002, Newton owned and operated a dealership that sold farm equipment. In November 2002, Newton began negotiations to purchase another nearby dealership, Vandalia Tractor & Equipment, Inc. (VTE). VTE at that time was being operated by two brothers, Tim and Ron Emerick.

Newton was at first reluctant to purchase VTE. Newton decided it could not buy VTE without having a local partner with which to run the dealership. Eventually, one of VTE's salesmen, Mike Cripe, agreed to partner with Newton. Newton then proceeded in its attempt to purchase VTE. The negotiations between Newton and VTE culminated in an asset purchase agreement signed by both parties on July 10, 2003. Among the provisions of that agreement was section 8.11, which allowed Newton to cancel the asset purchase agreement if it was unable to obtain authority to sell New Holland, Agco or Kubota products. If any one of those manufacturers denied Newton a license to sell its products, Newton could rescind the agreement.

At the time Newton and VTE entered into the asset purchase agreement, VTE was an authorized dealer for Kubota, a manufacturer of a line of farm equipment. VTE was also authorized to sell other lines of equipment. As part of purchasing VTE, Newton became the authorized dealer for several lines of equipment previously sold at VTE's dealership.

The authority to sell Kubota products, however, was not included within the asset purchase agreement. Instead, Kubota required Newton to submit an application to Kubota's local representative, defendant Michael Jacobson. On June 19, 2003, Newton submitted its application to Jacobson along with financial statements. That application had not been approved at the time Newton and VTE entered into the asset purchase agreement.

In its complaint, Newton alleges that its officers met with Tim Emerick and Jacobson on July 25, 2003. At that meeting, Jacobson explained that Newton could not have their application processed until Kubota had approved termination of Kubota's existing relationship with VTE. Jacobson presented a voluntary termination agreement to VTE. Newton alleges that Tim Emerick told Ja-

cobson he would not sign the termination agreement if Newton were not going to become the authorized Kubota dealer. Newton alleges Jacobson responded by saying, "They [Newton] will be the dealer."

Newton claims that in reliance on this statement by Jacobson, it allowed Tim Emerick to sign the termination agreement. Tim Emerick in his affidavit confirmed that he would not have signed the termination agreement if Newton was not going to be the authorized Kubota dealer. Newton claims to have further relied on Jacobson's statements by selling Kubota products under VTE's dealership number and performing $28,500 in warranty work on Kubota equipment.

On July 28, 2003, Jacobson submitted an internal memo recommending that Newton become the authorized Kubota dealer. In an analysis dated July 29, 2003, Jacobson indicated that "Vandalia Tractor & Equip. was purchased by Newton Tractor Sales, Inc. dba Vandalia Tractor Sales, Inc. Dealer Buy-out w/out interruption of Kubota sales & service." On August 12, the application was approved at Kubota's division level. However, Newton's application was subsequently denied by Kubota's corporate office. According to Jacobson, Newton was informed of the decision on August 25, 2003, and was invited to submit further information to Kubota. Newton did so, but Kubota did not change its position on Newton's application. In late September, Kubota had its products removed from the former VTE dealership in Vandalia.

Newton filed a complaint against Kubota and Jacobson on three counts—promissory estoppel (count I), common law fraud (count II), and negligent misrepresentation (count III). Defendants filed a separate motion for summary judgment for each of the three counts.

The circuit court granted summary judgment in favor of Kubota and Jacobson on all three counts. With respect

to count I, the promissory estoppel claim, the circuit court relied on several decisions by the appellate court in deciding that promissory estoppel was not a recognized cause of action under Illinois law. With respect to count II, common law fraud, the court found that Newton could not establish, as a matter of law, that Jacobson's statements caused it damage and that Newton could not establish justifiable reliance on Jacobson's statements. The court based its conclusion on the fact that Newton had the option, pursuant to section 8.11 of the asset purchase agreement, to cancel the agreement if Newton were not awarded the authorization to sell Kubota equipment. As to count III, the circuit court found that Newton could not establish that Kubota was "in the business of providing information as a part of its business," a requisite for negligent misrepresentation claims.

Newton filed a notice of appeal seeking reversal of the circuit court's judgment on each of the three counts. In its appellate brief, however, Newton argued only the promissory estoppel claim. In its appellate brief, Newton did not challenge the circuit court's order regarding common law fraud or negligent misrepresentation. The appellate court's opinion, therefore, also primarily addressed Newton's arguments as to whether promissory estoppel is a valid cause of action in Illinois.[1] In line with its previous decisions in *DeWitt v. Fleming*, 357 Ill. App. 3d 571 (2005), and *ESM Development Corp. v. Dawson*, 342 Ill. App. 3d 688 (2003), the appellate court held that a promissory estoppel claim may be brought only as a defense, and not as a cause of action. Newton then sought leave to appeal in this court.

---

[1]The appellate court also addressed Kubota's cross-appeal asking the court to award subpoena and deposition transcription fees. However, the appellate court affirmed the circuit court's decision not to award fees and Kubota has not challenged that judgment in this court.

## ANALYSIS

### I. Promissory Estoppel

The doctrine of promissory estoppel is a common law doctrine. This doctrine has been incorporated into the Restatement (Second) of Contracts as section 90. That section provides, in relevant part:

"§90. Promise Reasonably Inducing Action or Forbearance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." Restatement (Second) of Contracts §901(1), at 242 (1981).

Although section 90 does not expressly refer to "promissory estoppel," that term is widely used in connection with this provision of the Restatement. Restatement (Second) of Contracts §90, Comment *a*, at 242 (1981). Black's Law Dictionary formulates the doctrine as:

"The principle that a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor should have reasonably expected the promisee to rely on the promise and if the promisee did actually rely on the promise to his or her detriment." Black's Law Dictionary 591 (8th ed. 2004).

This court referenced the elements of promissory estoppel in *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281 (1990). To establish a claim, the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment. *Quake*, 141 Ill. 2d at 309-10.

Although both parties in this case generally focus their arguments on *Quake*, this court expressly recognized the doctrine of promissory estoppel, as articulated

by section 90, in *Bank of Marion v. Robert "Chick" Fritz, Inc.*, 57 Ill. 2d 120 (1974), and the doctrine's underpinnings were made clear by this court long before even that case. See *Estate of Beatty v. Western College*, 177 Ill. 280, 293 (1898) (" 'It is the expending of money, etc., or incurring a legal liability on the faith of the promise, which gives the right of action' "), quoting *Pratt v. Trustees of the Baptist Society of Elgin*, 93 Ill. 475, 478 (1879). In *Bank of Marion*, the plaintiff bank and a third-party contractor agreed to advance funds to the defendant beer distributor if the defendant promised to make payments on the loan jointly to the bank and contractor. Later, all payments made by defendant were made to the contractor alone. The bank then sued on a theory of promissory estoppel.

After finding that no contract existed between the bank and the defendant, this court considered alternative grounds of recovery. Referencing section 90, we noted that "[a]lthough there may be absent a bargained-for consideration, a person who makes a promise may nonetheless be bound by its terms." *Bank of Marion*, 57 Ill. 2d at 124.

*Quake*, decided almost 17 years after *Bank of Marion*, also recognized promissory estoppel as an affirmative cause of action. In *Quake* this court affirmed the appellate court judgment allowing plaintiff's promissory estoppel claim to go forward, recognizing that promissory estoppel is an available theory in the absence of a contract. *Quake*, 141 Ill. 2d at 310. Likewise, in *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104 (1999), although two justices found that promissory estoppel was not available under the facts of that case, those justices considered it important to discuss the doctrine as it stood in Illinois at that time. *Doyle*, 186 Ill. 2d at 118-23 (Freeman, J., concurring in part and dissenting in part, joined by McMorrow, J.). The partial concurrence cited *Quake* for

the four elements a plaintiff must prove to establish a promissory estoppel claim in Illinois. Those justices referred both to the traditional uses of promissory estoppel—gratuitous promises, charitable subscriptions and certain intrafamily promises—and to the expanded use of the doctrine to apply to otherwise defective contracts and preliminary negotiations. Neither *Quake* nor the partial concurrence in *Doyle* reflects any doubt that promissory estoppel is recognized in Illinois.

The appellate court has also acknowledged promissory estoppel as a cause of action, both before and after *Quake*. First, in *Illinois Valley Asphalt, Inc. v. J.F. Edwards Construction Co.*, 90 Ill. App. 3d 768 (1980), the court stated that "[p]romissory estoppel is a doctrine under which the plaintiff may recover without the presence of a contract." *Illinois Valley Asphalt*, 90 Ill. App. 3d at 770. More recently the appellate court has again restated the requirements of promissory estoppel, analyzing the claim as an affirmative cause of action. *Pickus Construction & Equipment v. American Overhead Door*, 326 Ill. App. 3d 518, 523 (2001). See also *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill. App. 3d 795, 800 (2005); *Cullen Distributing, Inc. v. Petty*, 164 Ill. App. 3d 313, 325-26 (1987) (Green, J., concurring in part and dissenting in part).

In addition to our own state courts, the United States Court of Appeals for the Seventh Circuit has consistently interpreted Illinois law to recognize promissory estoppel as a cause of action. See *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 676-77 (7th Cir. 2005); *R.S. Bennett & Co. v. Economy Mechanical Industries, Inc.*, 606 F.2d 182, 186 (7th Cir. 1979). Although the Seventh Circuit's application of Illinois law does not bind this court, we can conclude that *Bank of Marion* and *Quake* have been sufficiently clear to allow the Seventh Circuit to hold that Illinois law recognizes promissory estoppel as an affirmative cause of action.

Having concluded that promissory estoppel has previously been recognized as a cause of action, we now address Kubota's policy arguments. First, the appellate court majority concluded, and Kubota argues here, that *Quake* itself did not fully consider whether promissory estoppel should be recognized as an affirmative cause of action. Specifically, the court below deemphasized *Quake*'s discussion of promissory estoppel as " 'a scant two pages of its otherwise voluminous opinion' " and was not " 'persuaded *** that *Quake Construction, Inc.* stands for the proposition that promissory estoppel is a proper vehicle for direct relief in Illinois courts.' " 382 Ill. App. 3d 1176, 1181, quoting *DeWitt*, 357 Ill. App. 3d at 574. Kubota has similarly suggested that promissory estoppel was simply an assumed issue in a minor part of the opinion.

We recognize that in *Quake* this court did not examine the full contours of the doctrine of promissory estoppel. However, as noted above, an examination of the precedent cited in *Quake*, particularly our decision in *Bank of Marion* referencing and adopting section 90 of the Restatement (Second) of Contracts, leads to the conclusion that promissory estoppel is a recognized affirmative cause of action in Illinois. Case law from the appellate court, and from the Seventh Circuit, serves to further reinforce that conclusion.

Even if Illinois case law were not conclusive as to whether promissory estoppel is available as an affirmative cause of action, we would be unwilling to accept Kubota's argument that promissory estoppel should be limited solely to defensive actions. Kubota asserts that promissory estoppel is limited only to "enforcing a plaintiff's promise (to the defendant's benefit) as to an intended abandonment of the legal right the plaintiff is intending to enforce." Under this theory, promissory estoppel is available to a defendant debtor who seeks to

prevent the plaintiff creditor from charging interest where the plaintiff had previously promised not to charge any. Similarly, Kubota contends the doctrine may also be used to allow a defendant tenant to avoid summary ejectment when the plaintiff landlord had promised not to require written notice for renewing the lease.

Kubota is correct that "it is often said that promissory estoppel is most extensively recognized and most frequently applied where there is a promise as to an intended abandonment of existing rights." See R. Brazener, Annotation, *Promissory Estoppel as Basis for Avoidance of Statute of Frauds*, 56 A.L.R.3d 1037, 1042 (1974). However, recognizing promissory estoppel as an affirmative cause of action in Illinois is consistent with the same literature Kubota cites and is consistent with decisions of other courts.

Although promissory estoppel is most extensively recognized with respect to the abandonment of existing legal rights, the annotation cited by Kubota also explains that "[m]any courts and other legal authorities have taken a much broader view of promissory estoppel, which permits the doctrine to be used as a 'sword' in any situation where a promise has been made which was relied upon by the promisee to his detriment in such a manner as to make it a fraud or injustice not to enforce the promise." 56 A.L.R.3d at 1042. As one court stated, "Promissory estoppel is an offensive theory of recovery, or cause of action, providing a remedy for those who rely to their detriment, under certain circumstances, on promises, despite the absence of any mutual agreement by the parties on all the essential terms of a contract." *Wheat Ridge Urban Renewal Authority v. Cornerstone Group XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007). See also *People's National Bank of Little Rock v. Linebarger Construction Co.*, 219 Ark. 11, 17, 240 S.W.2d 12, 16 (1951) (noting promissory estoppel "is an attempt by the

courts to keep remedies abreast of increased moral consciousness of honesty and fair representations in all business dealings"). Elsewhere, promissory estoppel has specifically been distinguished from equitable estoppel because the latter "is available only as a defense, while promissory estoppel can be used as the basis of a cause of action for damages." 28 Am. Jur. 2d *Estoppel & Waiver* §35, at 465 (2000). We, therefore, reject Kubota's argument that this court should recognize promissory estoppel only so far as is consistent with what Kubota calls its "traditional limitations."

Beyond suggesting that promissory estoppel is merely defensive in nature, Kubota suggests that allowing an affirmative cause of action in promissory estoppel would undermine public policies underlying contract law in two ways. First, Kubota contends that promissory estoppel could result in otherwise unenforceable unilateral contracts. Second, Kubota contends that parties will be hesitant to enter preliminary negotiations for fear of being held to statements made in those negotiations.

With respect to the first issue, Kubota points in particular to relationships in the field of development and construction. In construction, before a general contractor is awarded a bid, it must approach one or more subcontractors for their respective bids on specific parts of the overall project. Kubota expresses concern that promissory estoppel, as an affirmative action, would "erode the incentives for parties to carefully consider and detail the contractual terms and obligations in their relationships, and it would unfairly and unnecessarily expose one of the parties to unilateral obligations." Citing a North Carolina case, Kubota argues that promissory estoppel would "force[ ] the subcontractor to be bound if the general contractor uses his bid, even though the general contractor is not obligated to award the job to that subcontractor."

We note that the scenario envisioned by Kubota is not the scenario presented in this case. Newton and Kubota did not have a general contractor-subcontractor relationship. However, we also note that our own appellate court has addressed the particular issue of subcontractor bids and has applied the promissory estoppel doctrine. See *Pickus Construction & Equipment*, 326 Ill. App. 3d at 523-27; *Illinois Valley Asphalt*, 90 Ill. App. 3d at 770-71; *S.M. Wilson & Co. v. Prepakt Concrete Co.*, 23 Ill. App. 3d 137, 139 (1974) ("The doctrine of promissory estoppel is recognized in Illinois"). Given the appellate court's experience and familiarity in addressing this scenario, we remain convinced that allowing promissory estoppel as a cause of action will not affect the existing relationship between general contractors and their subcontractors and suppliers. Therefore, we reject Kubota's first public policy argument.

We next address Kubota's second public policy argument. Kubota has argued that recognizing an affirmative action under promissory estoppel will result in reluctance to enter into commercial negotiations for fear of being obligated to perform contracts that have not been fully negotiated.

Kubota uses *Quake* to support its argument that promissory estoppel would hinder commercial negotiations. Kubota argues that in *Quake*, a letter of intent at issue was "quite detailed" and included "all the necessary terms of the contractual relationship." In that case, had the court found in favor of the plaintiff on promissory estoppel grounds, ordering the defendant to perform the contract under the terms of the letter of intent might be appropriate. Kubota argues here, however, that the alleged promise made to Newton was merely that Newton "would get the dealership." Kubota contends that enforcing this promise would be impractical, because that promise includes none of the necessary terms of a

contractual relationship and does not represent mutual assent.

Here, we believe that Kubota misunderstands the equitable nature of promissory estoppel. Although the Restatement indicates that "full-scale enforcement by normal remedies is often appropriate," it also contemplates partial enforcement. See Restatement (Second) of Contracts §349, Comment *b*; §90, Comment *d* (1981). Thus, courts may appropriately limit relief to only those damages suffered as a result of justifiably relying on the other party's promise.

Two cases from our sister state courts demonstrate the application of reliance damages in promissory estoppel cases. In *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 133 N.W.2d 267 (1965), plaintiff had hoped to open a grocery store and entered into negotiations with a representative of a grocery store chain. Plaintiff was advised to sell his current business and relocate to a location the company thought was better suited for him. Plaintiff sold his store at a busy time of year for tourists and consequently missed an opportunity for profit. Throughout the process, representatives from the grocery chain told the plaintiff that everything was "all set" and ready to go. The deal fell through based on a previously undisclosed condition to which the plaintiff could not agree.

Plaintiff brought a promissory estoppel claim. In that case the Wisconsin Supreme Court adopted section 90 of the Restatement and proceeded to determine whether the trial court awarded the proper damages to the plaintiff. The court did not hold that the plaintiff was entitled to the grocery store franchise based on the original understood terms of the agreement. Rather, citing Corbin on Contracts, the court reasoned that the appropriate measure of damages was plaintiff's expenditures or change of position in reliance on the promise. *Hoffman*, 26 Wis. 2d at 701-02, 133 N.W.2d at 277.

Similarly, the Texas Supreme Court limited the damages of a plaintiff who had hoped to enter into a construction contract. See *Wheeler v. White*, 398 S.W.2d 93 (Tex. 1966). The plaintiff had planned to begin construction of a new apartment building. In reliance on a promised loan by the defendant, the plaintiff proceeded to demolish the buildings that were already on the property. Later, the promised financing was not delivered, and plaintiff brought suit under a theory of promissory estoppel.

In discussing damages the court focused on the harm plaintiff suffered in reliance on the promised loan. "[A]ll that is required to achieve justice is to put the promisee in the position he would have been in had he not acted in reliance upon the promise." *Wheeler*, 398 S.W.2d at 97.

In neither of the above cases did the court order that a contract be specifically performed. Where there has not been mutual assent, and the terms are not sufficient to constitute a contract, damages may appropriately be limited to restoring plaintiff to the position he was in prior to relying, to his detriment, on the promise. Thus, we reject Kubota's concerns that promissory estoppel would somehow undermine preliminary negotiations.

For the foregoing reasons, we reiterate that Illinois law provides for an affirmative cause of action under the doctrine of promissory estoppel.

## II. Whether Plaintiff Sufficiently Established a Promissory Estoppel Claim

Having recognized that Illinois law allows promissory estoppel as an affirmative cause of action, we turn next to Kubota's alternative argument that Newton has not stated a promissory estoppel claim sufficient to survive summary judgment. Kubota has argued that even if promissory estoppel is a recognized cause of action, Newton has still failed to establish a genuine issue of material fact with respect to each of promissory estoppel's four elements. Specifically, Kubota contends that Newton

has forfeited any argument as to elements (3) and (4) as a result of the trial court's reasoning regarding Newton's fraud claim brought in count II.

Two elements of fraud—that the plaintiff justifiably relied on the false statements of the defendant, and that the reliance caused damage—are similar to the third and fourth elements of promissory estoppel. Compare *Doe v. Dilling*, 228 Ill. 2d 324, 342-43 (2008), with *Quake*, 141 Ill. 2d at 310. The circuit court made rulings on each of these fraud elements. The circuit court found, viewing the evidence in a light most favorable to Newton, that there was no genuine issue of material fact with respect to the two elements of reliance and detriment. The court concluded, "[T]here can be no justifiable reliance or proximate causation of damages for allegedly fraudulent statements made after the [asset purchase agreement] was signed \*\*\*." Further, because the asset purchase agreement could have been rescinded if Newton did not receive the Kubota dealership, the court found that Jacobson's statements could not have caused damage to Newton.

Newton's appeal to the appellate court addressed the circuit court order granting summary judgment for Kubota on each of Newton's three counts. However, in its brief, Newton argued only its theory of promissory estoppel. Newton presented no argument on either the fraud or misrepresentation claims. Kubota asserts that the circuit court's reasoning and judgment that Newton lacked justifiable reliance must stand and that Newton has forfeited any argument on that point.

At oral argument, counsel for Newton noted that on appeal it decided to move forward on what it thought was the best ground of appeal, and that Newton did argue to the appellate court that Newton justifiably relied on Jacobson's statements and that it did so to its detriment. Thus, although Newton forfeited any further consider-

ation of its fraud and negligent misrepresentation claims as a whole, we conclude that it did properly preserve its argument in the appellate court against the circuit court's determination that Newton lacked detrimental reliance.

Kubota asserts that even if the issue is not forfeited, Newton's claim nonetheless fails to establish a genuine issue of material fact on each of the four elements of promissory estoppel. However, neither the circuit court nor the appellate court has yet addressed whether there is any genuine issue of material fact with respect to Newton's promissory estoppel claim. Kubota argues that the circuit court did address the issues of reliance and damages when considering Newton's fraud claim. Reviewing the circuit court's decision on Newton's fraud claim, however, would require this court to determine whether the elements of fraud and promissory estoppel are identical for purposes of reviewing a grant of summary judgment. That issue has not been posed to this court or briefed by the parties. For that reason, we decline to address it, and instead remand to the circuit court for further consideration.

## CONCLUSION

For the foregoing reasons, we conclude that promissory estoppel is an affirmative cause of action in Illinois, reverse the judgments of the appellate and circuit courts, and remand to the circuit court for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*