# Illinois Official Reports

## Appellate Court

***Centro Medico Panamericano, Ltd. v. Laborers' Welfare Fund of the Health & Welfare Department of the Construction & General Laborers' District Council,***
**2015 IL App (1st) 141690**

| | |
|---|---|
| Appellate Court Caption | CENTRO MEDICO PANAMERICANO, LTD., an Illinois Corporation, s/b/a Fullerton Kimball Medical and Surgical Center, Plaintiff-Appellant, v. LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-14-1690 |
| Filed | May 13, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-006838; the Hon. Sanjay T. Tailor, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Douglas L. Prochnow, John A. Roberts, and William R. Andrichik, all of Edwards Wildman Palmer LLP, of Chicago, for appellant.<br><br>J. Peter Dowd, Justin J. Lannoye, and George A. Luscombe III, all of Dowd, Bloch, Bennett & Cervone, of Chicago, for appellee. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Justices Hyman and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    This interlocutory appeal arises from the trial court's order granting summary judgment in an insurance coverage lawsuit to defendant Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity. On appeal, plaintiff Centro Medico Panamericano, Ltd., an out-patient surgical center, contends that the trial court erroneously granted defendant's motion for summary judgment because defendant's service representatives made plaintiff an oral unambiguous promise about the extent of insurance coverage. Plaintiff also contends that the trial court erred in concluding that the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 18 (2000) (ERISA)), preempted plaintiff's claim for promissory estoppel. In addition, plaintiff contends that the trial court erred by considering inadmissible hearsay and failing to grant plaintiff's Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) motion to strike. We affirm.

¶ 2                                        BACKGROUND

¶ 3    We recite only those facts necessary to understand the issues raised on appeal. Between June 2007 and October 2011, plaintiff provided medical services for 21 procedures on 16 patients. Before each procedure, plaintiff placed a verification call to defendant's service representatives to verify whether the procedure was covered by each patient's health insurance policy. During the verification calls, plaintiff provided defendant with the provider's name, the patient's name, insurance information, and the procedure and services to be performed. Defendant responded by confirming coverage and the amount of benefits available for each procedure, which was a percentage of plaintiff's billed charges. Defendant paid plaintiff on each of the claims totaling $35,491.05, pursuant to the plan's "usual and customary charges" for out-of-network providers, including any applicable deductibles or coinsurance, which was significantly less than the amount billed. Upon payment, defendant also provided an explanation of benefits for each claim and explained why payments were not paid in full. Defendant also included information about its detailed appeal procedure, but no participant appealed.

¶ 4    In June 2012, five years after the first disputed claim, plaintiff filed this promissory estoppel suit against defendant contending that it was entitled to approximately $98,000 more on its claims, arguing that defendant's service representatives orally promised that defendant would pay a fixed percentage of whatever amount plaintiff billed, no matter how high or excessive. In response, defendant filed a motion for summary judgment, including the affidavits of its claims director Lori Williams and expert Rebecca Busch, contending that plaintiff could not establish its promissory estoppel claim under Illinois law. Defendant also contended that because this dispute over the level of benefits paid to plaintiff related to an ERISA plan, plaintiff's claim was preempted.

¶ 5    According to Williams' affidavit, defendant was a multiemployer ERISA welfare fund and provided for the payment to eligible participants of health benefits detailed in its written plan of benefits (the Plan). Defendant only paid benefits in accordance with the Plan as interpreted by the trustees or persons delegated by them to decide benefit issues in their sole discretion. The Plan prevented excessive charges by only allowing payment for "usual and customary

charges" defined in the Plan. The definition of "usual and customary charges" depended on whether the provider was in-network or out-of-network. For in-network providers (PPOs), defendant had a negotiated rate for services. Defendant, however, had no negotiated rate with out-of-network providers, such as plaintiff. Therefore, to limit exposure to excessive claims from these out-of-network providers, the Plan would pay only "usual and customary charges" defined as a "charge that [was] no higher than the 90th percentile of the Plan's most currently available healthcare charge data, or where there [was] insufficient data, a value or amount established by the Fund." Since July 2007, defendant based those amounts on data provided by Blue Cross Blue Shield.

¶ 6        In addition, defendant's participant service representatives received over 14,000 calls per month from providers and participants inquiring about coverage and benefit levels for covered services. In response to such calls, these representatives verified whether each participant had coverage for that month. If the records reflected the coverage, the representative confirmed that to the caller and advised that the coverage was subject to the terms of the Plan. Defendant trained and expected its representatives to give the parameters of coverage under the Plan, including deductibles and coinsurance, and explain that charges were subject to the usual and customary allowance as currently in effect under the Plan.

¶ 7        Furthermore, the record reflected that representatives from both parties took notes summarizing the substance of the verification calls. There was no testimony, however, from anyone present on any of the calls. Plaintiff's insurance verification forms demonstrated that, in addition to verifying coverage, the parties discussed levels of benefits and limitations on coverage under the Plan, including deductibles and coinsurance. The records from three of the calls also made express reference to "usual and customary" limitation, and one log made specific reference to the "Blue Cross Blue Shield" allowed amount. Further, six of defendant's call records referenced the "Blue Cross Blue Shield" amount. Moreover, in her deposition, plaintiff's office manager Mary Jane Flojo admitted that on each of the calls the parties would have discussed or understood that benefit levels were subject to usual and customary limitation, although this may not have meant the same thing to both parties. She believed coverage was always 80% of whatever plaintiff charged. Plaintiff also required all of its patients to sign contracts agreeing to be personally and fully responsible for payment.

¶ 8        Before the hearing on the motion for summary judgment, plaintiff moved pursuant to Illinois Supreme Court Rule 191(a) to strike numerous paragraphs in Williams' affidavit as inadmissible hearsay, which contradicted her deposition testimony. Plaintiff also moved to strike paragraphs in Busch's affidavit because she did not have any personal knowledge of her averments. After hearing oral arguments, the trial court granted defendant's motion for summary judgment. The court concluded that there was no evidence of an unambiguous promise by defendant to pay the amounts claimed by plaintiff, and regardless, the promissory estoppel claim was preempted by ERISA. Therefore, the trial court denied plaintiff's motion to strike the affidavits as moot. Plaintiff timely filed this notice of appeal.

¶ 9                                                ANALYSIS
¶ 10       Plaintiff contends that the trial court erred in granting defendant's motion for summary judgment because defendant's service representatives made plaintiff an oral unambiguous promise about the extent of insurance coverage. We first note that since we may affirm on any

basis in the record, we need not consider whether this claim was preempted under ERISA. See *American Service Insurance Co. v. Iousoupov*, 2014 IL App (1st) 133771, ¶ 32.

¶ 11　　Summary judgment is proper where the pleadings, admissions, depositions and affidavits demonstrate there is no genuine issue as to any material fact so that the movant is entitled to judgment as a matter of law. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008); 735 ILCS 5/2-1005 (West 2010). In determining whether a genuine issue of material fact exists, the court must consider such items strictly against the movant and liberally in favor of its opponent. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). We review the trial court's order granting summary judgment *de novo*. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009).

¶ 12　　To establish a claim for promissory estoppel, a plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009).

¶ 13　　Based on the record on appeal, the trial court properly granted defendant's motion for summary judgment because plaintiff failed to establish a *prima facie* case for promissory estoppel, namely, that defendant made plaintiff an unambiguous promise to the extent of insurance coverage. Here, plaintiff did not provide any evidence, such as testimony from any of its claim representatives or an actual transcript of the calls, suggesting that defendant's representatives made plaintiff an unambiguous oral promise. In fact, plaintiff's insurance verification forms reflect that the parties discussed levels of benefits and limitations on coverage under the Plan, including deductibles and coinsurance. Plaintiff's written records from three of the calls made express reference to "usual and customary," and one log made specific reference to the "Blue Cross Blue Shield" allowed amount. In addition, six of defendant's records referenced this standard. Furthermore, Williams attested that defendant trained its representatives to give the parameters of coverage under the Plan and explain that charges were subject to the usual and customary allowance. Nothing in the record suggests that defendant's representatives failed to do so. Thus, we cannot say that defendant definitively made plaintiff an unambiguous promise based on the record before us. See *Robinson v. BDO Seidman, LLP*, 367 Ill. App. 3d 366, 372 (2006) (where the plaintiff failed to sufficiently allege that the defendant's promises for permanent employment were unambiguous or allege additional facts in his promissory estoppel claim from which such promises could be inferred); *cf. Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill. App. 3d 795, 803 (2005) (promissory estoppel was established when the parties had a common intention that the plaintiff's patients were covered under the insurance policy and then the defendant declined payment).

¶ 14　　In the alternative, plaintiff contends since it subjectively believed that its own charges established what was usual and customary, and defendant's representatives failed to dispel this belief, in fact an ambiguous promise was made to plaintiff's detriment. It is well settled under contract law that if the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). However, if the language of the contract is susceptible to more than one meaning, it is ambiguous. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). Thus, if the contract language is ambiguous, a court can consider extrinsic evidence to determine the parties' intent. *Id.*

¶ 15 We find plaintiff's argument unpersuasive. Defendant's uncontroverted expert testified that it is common knowledge in the health care industry that there are many differing standards of usual and customary charge limitations and it is common for a benefit plan to establish its own usual and customary limit on allowable payments. It is, however, *not* common or expected that an insurer or benefit plan would consent to paying a provider based on the provider's unilaterally determined usual and customary charge. Plaintiff has provided no compelling reason why insurance companies, as a standard industry practice, would agree to terms that so unilaterally favor medical institutions to the detriment of the insurance companies. Furthermore, plaintiff's office manager admitted that usual and customary limitation may not have meant the same thing to both parties, and plaintiff did nothing such as request written documentation from defendant to clarify this misconception. Again, plaintiff offers no evidence that an unambiguous promise was even made and provides no extrinsic evidence to support its claim that the parties shared a common intent under contract law. See also *Demos v. National Bank of Greece*, 209 Ill. App. 3d 655, 661 (1991) (where the court concluded that because the specification of the interest rate to be charged is a significant element of a contract to loan money and the "plaintiff expressly pleaded no allegations (and none could be implied) as to interest, duration, and terms of repayment, the court found no error" in the lawsuit's dismissal (citing *McErlean v. Union National Bank of Chicago*, 90 Ill. App. 3d 1141, 1146-47 (1980))). Accordingly, since plaintiff cannot meet its burden and establish its *prima facie* case for promissory estoppel, its claim fails.

¶ 16 Plaintiff further contends that the trial court erred by considering inadmissible hearsay and failing to grant plaintiff's Illinois Supreme Court Rule 191(a) motion to strike paragraphs of Williams' testimony. Under Illinois Supreme Court Rule 191(a):

> "Affidavits in support of and in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

Therefore, "if from the document as a whole, it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, Rule 191 is satisfied." (Internal quotation marks omitted.) *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 349 (2010). It is the function of a trial court to determine the admissibility of evidence, and its rulings will not be disturbed absent an abuse of discretion. *Id.* at 350.

¶ 17 In the case *sub judice*, we cannot say that the trial court abused its discretion. As defendant's claim director, Williams had personal knowledge of the training, instruction, and standard practice of defendant's service representatives in responding to provider calls, including what the representatives told providers about the Plan coverage and the notes that representatives recorded during the calls. She can certainly testify to this standard practice even though she was not a party to the calls, as well as the common business practices within the company. Thus, the trial court did not abuse its discretion in this matter.

¶ 18                              CONCLUSION

¶ 19          Based on the foregoing, we affirm the judgment of the circuit court of Cook County.

¶ 20          Affirmed.