# Illinois Official Reports

## Appellate Court

---

*Medicos Pain & Surgical Specialists, S.C. v. Travelers Indemnity Co. of America*,
2018 IL App (1st) 162591

---

| | |
|---|---|
| Appellate Court Caption | MEDICOS PAIN & SURGICAL SPECIALISTS, S.C., and AMBULATORY SURGICAL CARE FACILITY, LLC, Plaintiffs-Appellees, v. TRAVELERS INDEMNITY COMPANY OF AMERICA, and BLACKHAWK STEEL CORP., Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket No. 1-16-2591 |
| Filed | April 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-04140; the Hon. Brigid M. McGrath, Judge, presiding. |
| Judgment | Vacated. |
| Counsel on Appeal | Peter H. Carlson, Richard B. Polony, and Robert J. Finley, of Hinshaw & Culbertson LLP, of Chicago, and William P. Hardy, of Hinshaw & Culbertson LLP, of Springfield, for appellants.<br><br>Eugene E. Murphy Jr., John N. Hourihane Jr., and David F. Hyde, of Murphy & Hourihane, L.L.C., of Chicago, for appellees. |

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justice Ellis concurred in the judgment and opinion.
Justice Gordon specially concurred, with opinion.

**OPINION**

¶ 1    Medicos Pain & Surgical Specialists, S.C. (Medicos), and Ambulatory Surgical Care Facility, LLC (Ambulatory), provided surgical care to a machine operator who was injured at work, Javier Mendoza, but had to wait several years for payment from Mendoza's employer, Blackhawk Steel Corporation (Blackhawk), and Blackhawk's workers' compensation insurer, Travelers Indemnity Company of America (Travelers). Medicos and Ambulatory filed suit in the circuit court and were awarded statutory interest pursuant to section 8.2(d) of the Workers' Compensation Act (Act). 820 ILCS 305/8.2(d) (West 2010).[1] Section 8.2(d) states that late payments to a medical service provider "shall incur interest at a rate of 1% per month payable to the provider." 820 ILCS 305/8.2(d) (West 2010). In this appeal, Blackhawk and Travelers contend the interest award of $37,229 entered against them in 2016 is flawed for multiple reasons, including that while this appeal was pending, this court determined in 2017 that Medicos, Ambulatory, and other medical service providers who sued for statutory interest in *Marque Medicos* do not have a private right of action for the failure of an employer or insurer to comply with the interest provision of the Act. *Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, 83 N.E.3d 1027, *appeal denied*, No. 122568 (Ill. Nov. 22, 2017). Medicos and Ambulatory respond that in this instance, however, they successfully proved the elements of their promissory estoppel claim seeking statutory interest. Although they make no attempt to distinguish *Marque Medicos*, the appellees also contend there are no grounds for reversing the trial court's decision. *Marque Medicos*, 2017 IL App (1st) 160756.

¶ 2    The pertinent facts and legal principles are as follows. Mendoza severely injured both of his shoulders and lacerated his nose while at work in mid-2010, when he fell off a truck from a height of approximately four feet and landed on his left side. Mendoza was treated in a hospital emergency room and put on work restrictions until cleared by a physician. Rest, physical therapy, and other conservative treatment did not improve Mendoza's mobility or decrease his pain. He underwent further diagnostic testing, which revealed the severity of his injuries, and came under the care of orthopedic surgeon Dr. Ellis Nam, who recommended immediate surgery on both shoulders. Medicos faxed a one-page surgery approval request form to Travelers and received its faxed response before Dr. Nam repaired Mendoza's left rotator cuff

---

[1]The parties' arguments before the trial court and this court have included a mixture of references to section 8.2(d) and section 8.2(d)(3). Section 8.2(d)(3) was added by 2011 amendments to the Act, which reorganized that subsection and shortened the grace period for the accrual of interest. Pub. Act. 97-18 (eff. June 28, 2011) (recodifying and amending 820 ILCS 305/8.2(d) into 820 ILCS 305/8.2(d)(1)-(3)). Mendoza's injuries and the billing events at issue in this case occurred prior to the effective date of the 2011 amendments, but the amendment to section 8.2(d) makes no impact on our disposition of this appeal. Here, we refer to section 8.2(d) (820 ILCS 305/8.2(d) (West 2010)).

in late 2010. Ambulatory exchanged similar faxes with Travelers before Dr. Nam repaired Mendoza's right rotator cuff in early 2011. Medicos and Ambulatory share corporate offices and are owned by the same physician. The two one-page forms identified the procedures to be performed and contained a line for marking "Approved" or "Denied." Although Travelers ticked the approval line, the forms do not indicate the amounts that would be charged for the listed medical services.

¶ 3 About two years after Mendoza's accident, Medicos and Ambulatory attached the approval faxes and other exhibits to a complaint alleging they issued bills to Travelers and Blackhawk for $166,944, but received only $1714. The medical care providers claimed the insurer and employer were liable for the remaining balance under the equitable theory of promissory estoppel, as well as statutory interest under section 8.2(d) of the Act. 820 ILCS 305/8.2(d) (West 2010). Under the legal theory of promissory estoppel, " 'a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor should have reasonably expected the promisee to rely on the promise and if the promisee did actually rely on the promise to his or her detriment.' " *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51, 906 N.E.2d 520, 523 (2009) (quoting Black's Law Dictionary 591 (8th ed. 2004)); *Centro Medico Panamericano, Ltd. v. Laborers' Welfare Fund of the Health & Welfare Department of the Construction & General Laborers' District Council*, 2015 IL App (1st) 141690, ¶ 12, 33 N.E.3d 691 (setting out the elements the plaintiff must prove). The defendant's promise must be unambiguous. *Newton Tractor Sales*, 233 Ill. 2d at 51; *Centro Medico*, 2015 IL App (1st) 141690, ¶ 12. According to Medicos and Ambulatory, the two approval faxes amounted to an unambiguous promise to pay Mendoza's surgical bills (even though the faxes did not specify an amount or percentage of any charges or refer to the Act's schedule of allowable medical fees). Although Medicos and Ambulatory sought the balance of the medical bills, the complaint suggests the purpose of their lawsuit was to collect statutory interest, not the underlying bills. Medicos and Ambulatory titled the first paragraph of their pleading "Nature of the Case," and stated: "1. This suit seeks to recover statutory interest that has accrued and is immediately due and payable as a result of medical services provided by Plaintiffs. In addition, Defendants have damaged Plaintiffs by approving certain surgical procedures in advance, to induce Plaintiffs to allow those procedures to be performed in their facility[,] and thereafter failing to pay for those procedures." Another indication that the lawsuit was about the statutory interest, not the underlying bills, is that it is well established by statute and precedent that compensation owed for an employee's accidental injuries, including "all the necessary first aid, medical and surgical services, and all necessary medical, surgical, and hospital services thereafter incurred" (820 ILCS 305/8(a) (West 2014)), is an issue over which the Illinois Workers' Compensation Commission (Commission) has exclusive jurisdiction and that the role of the circuit court in compensation proceedings is limited to review only of the Commission's determinations. *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 18.

¶ 4 Amendments to the Act in 2005 limited the amount that providers could charge for covered medical services but added the interest provision of section 8.2(d) of the Act. *Marque Medicos*, 2017 IL App (1st) 160756, ¶¶ 19-20 (discussing the history of section 8.2(d)). The 2005 version of section 8.2(d) indicated, in relevant part, " 'In the case of nonpayment to a provider within 60 days of receipt of the bill which contained substantially all the required data elements necessary to adjudicate the bill or nonpayment *** [in accordance with] the fee schedule

established in this Section, the bill, or portion of the bill, shall incur interest at a rate of 1% per month payable to the provider.' " *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 20 (quoting Pub. Act 94-277, § 10 (eff. July 20, 2005)). Further amendments to the Act in 2011 reduced the maximum medical fees by 30% but shortened the 60-day grace period to 30 days and, for the first time, mandated " '[a]ny required interest payments shall be made within 30 days after payment.' " *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 23 (quoting Pub. Act 97-18, § 15 (eff. June 28, 2011)).

¶ 5        Consistent with the Act, Medicos and Ambulatory's action in the circuit court was stayed pending arbitration of Mendoza's claim before the Commission. There was no dispute as to the necessity of Mendoza's two surgeries. The arbitration proceedings focused on the types of medical service charges and the amounts, whether penalties and attorney fees should be imposed, and whether Mendoza, who was 44 when the accident occurred, had been permanently injured. Mendoza did not seek interest on any of the medical service charges.

¶ 6        In February 2013, the arbitrator issued a ruling based on the testimony, the documentary evidence, and the medical fee schedule contained in the Act. Travelers had made interim payments for Mendoza's two surgeries and reduced the bills by roughly half. The arbitrator determined the remaining charges were "reasonable and necessary" and awarded Medico an additional $29,708 and Ambulatory an additional $38,554. The arbitrator rejected Mendoza's contention that, because the surgeries were preauthorized, all the bills should have been paid and that he was entitled to penalties pursuant to sections 19(k) and 19(*l*) of the Act and attorney fees pursuant to section 16 of the Act (820 ILCS 305/16, 19(k), 19(*l*) (West 2012)). The arbitrator found that although the need for the surgeries had not been in contention, "there was clearly a disagreement as to whether all the charges stemming from those surgeries were reasonable and whether the outstanding fee schedule charges were accurately calculated [or had been double billed in error]." The arbitrator also found that Mendoza was entitled to permanent partial disability benefits. When Mendoza received the award payment, he remitted it to Medicos and Ambulatory.

¶ 7        The parties to the circuit court case (the employer, the insurer, and the two surgical care providers) returned to court and prepared for a bench trial limited to the issue of interest. Medicos and Ambulatory sought section 8.2(d) interest totaling $17,927 for the first surgery, section 8.2(d) interest totaling $19,303 for the second surgery, and $2208 in 5% prejudgment interest. 820 ILCS 305/8.2(d) (West 2010). During opening arguments, counsel for Medicos and Ambulatory made clear that his clients were asserting a statutory claim only:

> "What remains here is purely a claim for interest under Section [8.2(d)(3)] of the Illinois Workers' Compensation Act. There are very few factual matters that go into an analysis of what my clients [are] owed under that statute, and that's all that's at issue in this trial, Judge.
>
> * * *
>
> Judge, as a brief opening, a couple of remarks. [This is a] case about payment of interest on late paid medical bills. There's a provision of the Illinois Workers' Compensation Act that we've already mentioned, Section 8.2(d)(3)[,] that sets forth the circumstances under which a provider of medical services is entitled to the payment of interest at 1 percent per month on late paid medical bills.
>
> Under Section 8.2(d)(3), the facts that are relevant are: Was there a medical bill, was that medical bill sent and received by the employer and the payor of the bill.

- 4 -

Was that bill accompanied by all of the necessary data elements for adjudication of the bill. Was that bill paid, in this case, within 60 days of receipt, and if not, was interest paid within 30 days after payment of the bill.

What you'll hear in this trial, Judge, is a series of dates. You'll hear about the date of services provided for two surgeries were performed in September 2010 and February 2011.

Shortly after those surgical procedures were performed at my client's facilities, facility bills were sent to Travelers, one of the defendants in this case. There's really no dispute about the fact that the bills were sent, that they were received. You will hear about the dates when those things happen because the dates are what really matter under the statute. When was something received, if it wasn't paid within 60 days after receipt, interest begins to accrue at 1 percent per month."

¶ 8 The only witnesses at the one-day bench trial were the sole owner of Medicos and Ambulatory (Dr. Derrick Wallery) and a Travelers claims case manager who was called as an adverse witness (Deborah Nerad). Their testimony established the billing dates, that the bills were presented in detail in an industry-standard format known as UB-04 and were accompanied by detailed medical records, and that the bills were not paid until required by the Commission. At no point in the trial did Medicos or Ambulatory attempt to introduce the approval faxes or argue that they were relevant.

¶ 9 After the witnesses testified, the parties filed written closing arguments. Travelers and Blackhawk also tendered Circuit Court Judge Rita M. Novak's ruling issued just six days prior in four consolidated proposed class actions known as *Marque Medicos LLC v. Zurich American Insurance Co.*, Nos. 2015 CH 1580, 15 CH 4946, 15 CH 4949, and 15 CH 4951, in which a group of medical service providers sued a group of workers' compensation insurers alleging they were in violation of section 8.2(d)(3). 820 ILCS 305/8.2(d)(3) (West 2014). Judge Novak had ruled that the medical service providers, which included Medicos and Ambulatory, could not pursue their statutory interest claims under theories of an implied-in-fact contract, an implied private right of action under the Act, or as third-party beneficiaries of various workers' compensation insurance policies, and she dismissed the proposed class actions with prejudice. Medicos and Ambulatory objected to the presentation, without leave of court, of Judge Novak's new ruling, and further contended that the promissory estoppel action they were asserting against Travelers and Blackhawk was factually and legally different from the issues that had been addressed by Judge Novak.

¶ 10 At a hearing on March 11, 2016, the trial judge acknowledged Judge Novak's ruling but awarded the full amount of interest claimed by Medicos and Ambulatory.

¶ 11 Travelers and Blackhawk sought reconsideration, arguing that the promissory estoppel claim as to underlying bills became moot once the Commission entered its award and that it was inappropriate for the court to proceed solely on the statutory interest claim. They also contended the award of prejudgment interest was unwarranted. The trial judge ruled that the elements of promissory estoppel had been satisfied, but she deducted the prejudgment interest from the award and entered an amended judgment for only section 8.2(d) interest. 820 ILCS 305/8.2(d) (West 2010). That judgment is now on appeal.

¶ 12 Travelers and Blackhawk first argue that the award should be reversed because the medical service providers failed to prove promissory estoppel as alleged in their complaint, because they did not introduce into evidence or even mention the preauthorization faxes on which they

purportedly relied to their detriment, and because they further failed to present any testimony regarding any of the elements of a promissory estoppel claim. The appellants contend Medicos and Ambulatory instead pursued a statutory interest claim based solely on their billing history and that a judgment on the unproven promissory estoppel allegations is reversible error. They point out that in the case that proceeded before Judge Novak, she rejected all of Medicos and Ambulatory's statutory interest claims and dismissed the case with prejudice. We add that while the current parties were briefing their arguments, another panel of this appellate court affirmed Judge Novak's judgment against the medical service providers and that the Illinois Supreme Court denied a petition for leave to appeal. *Marque Medicos*, 2017 IL App (1st) 160756, *appeal denied*, No. 122568 (Ill. Nov. 22, 2017). In the alternative, Travelers and Blackhawk argue that the trial court lacked subject-matter jurisdiction to address the claim because all disputes regarding compensation and interest under the Act are within the exclusive jurisdiction of the Commission. Another alternative argument they make is that the arbitration proceedings operate as *res judicata* as to all forms of compensation and statutory interest because, although medical service providers do not have a right to appear before the Commission, these providers were in privity with Mendoza and Mendoza could have pursued the claim to section 8.2(d) interest. 820 ILCS 305/8.2(d) (West 2010). Travelers and Blackhawk conclude that we should reverse the interest award and remand the case with directions to the trial court to enter judgment against Medicos and Ambulatory.

¶ 13    Medicos and Ambulatory respond that the theory of promissory estoppel became irrelevant when the Commission upheld the arbitrator's award for medical service fees and the parties returned to the circuit court to address the issue of interest and that the trial evidence showed late payment, which, under the Act, entitled Medicos and Ambulatory to section 8.2(d) interest. 820 ILCS 305/8.2(d) (West 2010). Medicos and Ambulatory contend the appellants' main argument is an attempt to distract this court from the real issue at hand, which is that Medicos and Ambulatory were entitled to statutory interest, "not by [promissory estoppel or] quasi-contract, but by the plain language of the Act." Medicos and Ambulatory cite *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 38, but only for its conclusion that the trial court properly exercised subject-matter jurisdiction over common-law claims regarding section 8.2(d)(3) interest, and that the Commission is not authorized to resolve such common-law or statutory claims. Medicos and Ambulatory also contend that *res judicata* was not triggered by the Commission's final order, because the Commission has no authority over promissory estoppel or other common-law claims.

¶ 14    The appellees' contention that the common-law theory of promissory estoppel became irrelevant after the Commission awarded Mendoza compensation under the Act is a weak attempt to excuse the appellees' failure to prove the elements of their common-law claim. It cannot be seriously contended that the Commission's award to Mendoza, which was based entirely on his statutory right to compensation for a work-related injury, somehow established that (1) Traveler's presurgical faxes to Medicos and Ambulatory were an unambiguous promise to pay the surgical bills, (2) that Medicos and Ambulatory relied on that promise, (3) that the reliance was expected and foreseeable, and (4) that the reliance was detrimental to Medicos and Ambulatory. *Newton Tractor Sales*, 233 Ill. 2d at 51 (setting out the elements of promissory estoppel); *Centro Medico*, 2015 IL App (1st) 141690, ¶ 12 (same). The Commission's award had no effect on the promissory estoppel claim.

¶ 15    With or without the allegations that were intended to invoke the common-law theory of promissory estoppel, the plaintiffs' only basis for claiming interest was section 8.2(d) of the Act. The complaint made this limitation clear. This limitation was further confirmed by (1) counsel's introductory remarks at the one-day trial, (2) the fact that the trial evidence and testimony was limited to the bills and omitted even a mention of the approval faxes, (3) counsel's concluding remarks that interest should be awarded because "it took my client nearly four years to get paid," and (4) a posttrial brief in which the plaintiffs argued that by "prov[ing] all the elements required by 805 ILCS 305/8.2(d)(3) by a preponderance of the evidence," they became entitled to judgment.

¶ 16    We conclude that *Marque Medicos* is controlling. Before reaching the merits of the appeal, the *Marque Medicos* court held that the circuit court properly exercised subject-matter jurisdiction over a complaint that purported to rely on a common-law theory. *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 38. The reviewing court then held that the plaintiff medical service providers had no private right of action to be compensated for the purported failure of the defendant workers' compensation insurer and employer to comply with the interest provision of section 8.2(d)(3) of the Act. *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 38. As the court explained in *Marque Medicos*, a party may assert a right to be compensated for the violation of a statute only if a private right of action was authorized by the legislature. *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 57. There is no language in the statute that expressly authorizes a private right of action. A private right of action may be implied by statute only where "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 57. The failure to satisfy any of the four factors is fatal to a claim. *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 57. In *Marque Medicos*, the court affirmed the circuit court's finding that medical service providers, which included Medicos and Ambulatory, could not satisfy the first factor. This court also rejected the medical service providers' argument that because the payment obligations of section 8.2(d) of the Act were to be made to medical service providers and no one else, medical service providers should be considered members of the class benefited by the Act and capable of satisfying the first factor. *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 58. The argument was rejected because it is well established that the fundamental purpose of the Act is to protect *employees* by providing them with prompt and fair compensation for work related injuries, regardless of fault. *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 60. Further,

> "[the interest payment mandated] by section 8.2(d)(3) of the Act is but one of the many provisions in the Act designed to encourage the 'prompt' payment of compensation by an employer or insurer and to penalize any failure to make such prompt payment of compensation. [Citation.] While providers *might* receive some benefit from the specific interest provision contained in section 8.2(d)(3) of the Act, that benefit is *at most* incidental and was provided solely in an effort to serve the legislature's primary goal of compensating employees completely and promptly." (Emphases in original.) *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 60.

¶ 17    Accordingly, the court concluded that the medical service providers' claim for statutory interest failed as a matter of law, and it affirmed the circuit court's dismissal with prejudice. *Marque Medicos*, 2017 IL App (1st) 160756, ¶¶ 61, 75.

¶ 18    Medicos and Ambulatory do not argue any grounds for reconsidering the analysis and holding in *Marque Medicos*.

¶ 19    We find that regardless of whether Medicos and Ambulatory intended to proceed under the promissory estoppel theory or purely on a statutory basis, ultimately their only basis for claiming interest was section 8.2(d) of the Act and that the claim failed because medical service providers are not members of the class for whose benefit the Act was enacted. *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 61. Consistent with *Marque Medicos*, we find that the plaintiff medical service providers failed to state a claim upon which relief could be granted and that the trial court erred in awarding the statutory interest, which the plaintiffs sought in their single count pleading. As a result of this conclusion, we need not address the appellants' other arguments. We vacate the amended judgment order at issue on appeal.

¶ 20    Vacated.

¶ 21    JUSTICE GORDON, specially concurring:

¶ 22    I agree with the majority that the circuit court of Cook County must be reversed because the plaintiffs had no private right of action, but I believe that finding is based solely on the rule that the Workers' Compensation Act (Act) is the exclusive remedy for all provisions of the Act unless the Act says otherwise. 820 ILCS 305/5(a) (West 2010). The legislature has vested exclusive original jurisdiction in the Workers' Compensation Commission over matters involving an injured worker's rights to benefits under the Act and an employer's defenses to claims under the Act. 820 ILCS 305/1 *et seq.* (West 2010). The role of the trial court in workers' compensation proceedings is to act in an appellate capacity only on a properly filed matter governing a decision of the Workers' Compensation Commission. 820 ILCS 305/5(a) (West 2010). Section 8.2(d) of the Act states that late payments to a medical service provider "shall incur interest at a rate of 1% per month payable to the provider." 820 ILCS 305/8.2(d) (West 2010). The injured worker did not request enforcement of section 8.2(d) in the proceedings before the Workers' Compensation Commission, and the plaintiffs were not parties in that proceeding. The circuit court of Cook County had no jurisdiction to decide the issue of interest and cannot decide any of the theories advanced by plaintiffs.