FIFTH DIVISION
March 18, 2011

No. 1-10-0643

| | | |
|---|---|---|
| SCOTT RABIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 08 L 12871 |
| | ) | |
| KARLIN AND FLEISHER, LLC; RICHARD FLEISHER; | ) | Honorable |
| and RONALD FLEISHER; | ) | Allen S. Goldberg, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

JUDGE EPSTEIN delivered the judgment of the court, with opinion.

Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgement and opinion.

**OPINION**

Plaintiff, Scott Rabin, appeals the trial court's dismissal of his second amended complaint for retaliatory discharge (the Complaint) pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)). He maintains the trial court erroneously found the Complaint fails to state a cause of action. For the reasons below, we affirm.

BACKGROUND

In July 1997, defendant Karlin & Fleisher, LLC (the Firm) hired plaintiff to perform several duties acting as an investigator for its contingency fee cases. Although plaintiff was a salaried employee, the Firm billed its clients allegedly $40 per hour for plaintiff's work without disclosing his employment status or his actual wages, which were less than $40 per hour. Plaintiff did not initially record his hours at the Firm.

However, in 1998 Ronald Fleisher, one of the Firm's attorneys, allegedly advised him to bill the Firm for his hours on "invoices" dating back to the beginning of his employment. Plaintiff complied, initialing billing as:

"Scott Rabin, Investigator

Karlin & Fleisher

111 W. Washington, Suite 1505

Chicago, Illinois 60602"

Ronald allegedly then instructed him to remove the Firm's name from the invoices, in order to disguise the fact that he was an employee.

On July 10, 2007, Ronald allegedly asked plaintiff to alter an invoice in a case by adding plaintiff's name and address. Plaintiff declined, for "he felt it was improper or otherwise wrong." He then refused to provide any more "bogus 'investigation' invoices" to the Firm, complaining that "creating invoices that made it look like was not a fulltime paid employee of the Defendants *** was improper and may have been a violation of the law and the Rules of Professional Conduct." He also claimed defendants' "conduct amount[ed] to fraud on the clients and a fraud on the courts because the so-called expenses [for his services] were deducted from settlement proceeds paid to contingent fee clients and said sums were retained by the Defendants *** without the full knowledge and consent of the clients."

In February 2008 the Firm terminated plaintiff's employment. He then filed the instant lawsuit against Ronald, the Firm, and Richard Fleisher, a firm attorney. After the trial court dismissed plaintiff's original complaint with prejudice pursuant to section 2-615 and section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)), he filed a motion to reconsider that was denied. The trial court granted him leave to amend, however, pursuant to which he filed the Complaint claiming:

"15. In approximately February of 2008 the Plaintiff was terminated from his job. The termination was in retaliation of Plaintiff complaining about the fact he was asked to create and alter or amend 'invoices' that would make it appear as if he was not an employee of the Defendant firm and otherwise complained about charging clients for work he performed as a paid employee of the Defendants.

16. Defendants violated public policy by using 'invoices' that made it appear Plaintiff was not an employee, by not informing the clients that the Plaintiff was a fulltime employee, by charging the clients $40.00 per hour for the work performed without adequately informing the clients about th[e] fact that Defendant [sic] was an employee, by misleading clients and the courts about the expenses incurred and falsely characterizing overhead as expenses and overcharging clients for the expenses actually incurred.

17. The conduct of the Defendants violated public policy in at least 3 respects:

A. The Defendants [sic] conduct violated the crime fighter exception as stated by the Illinois Supreme Court in Palmateer v. International Harvester Co., 85 Ill. 2d 124, 130 (1981). The Plaintiff had a reasonable belief that the actions of the Defendants were in violation of criminal statutes and he reported this conduct to the Defendant and was fired in retaliation for reporting his reasonable belief that criminal activity had occurred. The Plaintiff had a reasonable belief that the actions of the Defendant were in violation of the Rules of Professional Conduct.

B. The Defendants [sic] conduct violated the Rules of Professional Conduct which include[ ] but [are] not limited to the Preamble, Rule 1.4(b), Rule 8.4

3

and Rule 1.5[.]

C. The Defendants [sic] conduct was also in direct violation of the Illinois criminal statutes which include but are not limited to 720 ILCS 5/16-1(2), 720 ILCS 5/17-1(b)(a) and 720 ILCS 5/8-2. The defendants [sic] action were [sic] criminal in nature based on false statements made to clients which induced the client to pay monies to the defendants when in fact the defendants did not incur any expenses, when the defendants improperly charged clients for overhead when such was not recoverable, when the defendants falsely stated to clients and courts that the expenses incurred were $40.00 per hour when in fact the amounts paid to plaintiff in salary was [sic] far less than $40.00 per hour and the Defendants otherwise misled clients and courts and collected at least approximately $250,000 in monies unlawfully and illegally and because they conspired to obtain monies under false pretenses and otherwise acted in a criminal manner.

18. The conduct of the Defendants is against public policy and because of their positions in society as attorneys whose duty is to uphold the law and act with scrupulous honesty and fidelity their firing Plaintiff for complaining about the conduct is actionable."

The trial court dismissed the Complaint with prejudice pursuant to section 2-615, finding, inter alia, that the Complaint failed to support plaintiff's claims of illegality and the trial court's previous ruling barred the professional responsibility claims. The court earlier held, in dismissing plaintiff's original complaint:

"The two situations in which Illinois courts have recognized retaliatory discharge are

4

when an employee is terminated for making a worker's compensation claim, or for reporting or refusing to engage in illegal conduct. [Citation.]

* * *

*** [W]e follow the Supreme Court in <u>Jacobson[</u> **v. Knepper & Moga, P.C.,** 185 **Ill. 2d 372 (1998),]** in declining to extend retaliatory discharge to apply to attorneys, who are already subject to the Rules of Professional Conduct. Even if we found that retaliatory discharge could be so extended, however, Plaintiff does not have a claim. As neither party alleges that Plaintiff filed a worker's compensation claim, Plaintiff must establish that he objected to illegal activity on the part of the Defendants in order to be considered a whistle blower. However, no such illegal activity existed. The **ARDC**[1] **found** no violations of the Supreme Court Rules of Professional Conduct in Defendants' conduct as alleged in Plaintiff's complaint, thus there is no illegal activity. As Plaintiff is not a whistle blower, and as we will not extend the tort of retaliatory discharge, Plaintiff's claim *** [is] dismissed for failure to state a claim."

Plaintiff now appeals, contending the Complaint states a retaliatory discharge claim.

## ANALYSIS

"When reviewing the dismissal of a complaint for failure to state a cause of action, all well-pleaded

---

[1] "The ARDC is an agency of [the supreme] court which, *inter alia*, receives, investigates and prosecutes allegations of professional misconduct by attorneys licensed to practice in Illinois." *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 217 (2000).

facts and inferences drawn therefrom are accepted as true." *Paskarnis v. Darien-Woodridge Fire Protection District*, 251 Ill. App. 3d 585, 586 (1993).

> "A reviewing court should interpret the facts alleged in the complaint in the light most
> favorable to the plaintiff. [Citation.] A complaint should not be dismissed unless it
> clearly appears that no set of facts could be proved under the pleadings which would
> entitle the pleader to relief. [Citation.] Pleadings are to be liberally construed with a
> view to doing substantial justice between the parties." *Id.*

Nevertheless, "Illinois is a fact-pleading jurisdiction. [Citation.] While the plaintiff is not required to set forth evidence in the complaint [citation], the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions [citation.]" *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006). Our review of a section 2-615 or section 2-619 dismissal is *de novo. Solaia Technologies, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). We are not bound by the trial court's reasoning and "may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground." *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008).

An Illinois employer may generally fire an at-will employee for any or no reason. *Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 375-76 (1998). The tort of retaliatory discharge is a "limited and narrow" exception to that rule. *Id.* at 376. "[T]he only proper defendant in a retaliatory discharge action is the plaintiff's former employer." *Buckner v. Atlantic Plant Maintenance Inc.*, 182 Ill. 2d 12, 22 (1998). It is undisputed here that plaintiff's former employer is the Firm. Plaintiff's conclusory and unsupported allegation that Ronald and Richard Fleisher "are jointly and severally

liable to" him as well is insufficient to state a claim. *Misselhorn v. Doyle*, 257 Ill. App. 3d 983, 985-86 (1994) (In ruling on a motion to dismiss "the court must ignore conclusions of law and fact not supported by allegations of the specific facts upon which such conclusions rest."). We affirm the dismissal of defendants Richard and Ronald Fleisher with prejudice.

As for the Firm, "to state a valid retaliatory-discharge cause of action *** plaintiff must allege that he was discharged in retaliation for his activities and that his discharge violates a clear mandate of public policy." *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 529 (1985).

> "While there is no precise definition of what constitutes clearly mandated public policy, a review of Illinois case law reveals that retaliatory discharge actions are allowed in two settings. The first situation is when an employee is discharged for filing, or in anticipation of the filing of, a claim under the Workers' Compensation Act ( 820 ILCS 305/1 *et seq.* (West 1992)). [Citations.] The second situation is when an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistle blowing.' " *Jacobson*, 185 Ill. 2d at 376.

Case law also reveals that retaliatory discharge claims have been disallowed between licensed attorneys previously employed as such and their former firms. *Id.* at 378. Here, plaintiff, a non-attorney, maintains he was fired by the Firm for complaining about, and refusing to participate in, criminal conduct that violates the Rules of Professional Conduct (Rules), namely, the Firm's alleged policy of

> "using 'invoices' that made it appear Plaintiff was not an employee, *** not informing the clients that Plaintiff was a fulltime employee, *** charging the clients $40.00 per

7

hour for the work performed without adequately informing the clients about the fact that Defendant [*sic*] was an employee, \*\*\* misleading clients and the courts about the expenses incurred and falsely characterizing overhead expenses and overcharging clients for the expenses actually incurred."

We will address these in turn, beginning with the Firm's rate for plaintiff's services.

While plaintiff maintains the Firm improperly charged its clients more than the actual cost of his investigation services, he does not dispute the clients signed agreements, one of which is attached as exhibit 1 to the Complaint, agreeing to pay investigation expenses "based on the cost *and/or prevailing rates for such services in the Chicagoland area*." (Emphasis added.) Plaintiff does not maintain the Firm did not charge the prevailing rate for his services, that the rates were unreasonable, or that he did not perform the work billed. He argues instead that the investigation charges were improper because they are "overhead which an attorney cannot charge for in a contingency fee case." This conclusory allegation fails on its face. *Johnson v. Thomas*, 342 Ill. App. 3d 382 (2003), cited by plaintiff in support of that conclusion, is inapposite. There, unlike in this case, the prevailing party sought to recover costs under a statute that neither defined "costs" nor listed which costs were recoverable. *Id.* at 401. Here, the Firm's form contract upon which plaintiff's claims are based plainly states that investigation expenses shall be paid by the client in addition to the percentage fee:

"I agree to pay my attorneys a fee, pursuant to the Illinois Statute, for their services only if recovery is obtained and then based upon the following schedule:

RECOVERY

A. 33 1/3% of the gross amount recovered by settlement if a lawsuit

is not filed.

B. 40% of the gross amount recoverable if a lawsuit is filed and/or a demand for arbitration/mediation is filed.

COSTS

In addition to the fee, client agrees to pay all expenses such as *investigation*, medical records, court costs, etc. incurred in the handling of said claim. *Said expenses will be incurred at the discretion of KARLIN & FLEISHER, L.L.C. and will be charged based on the cost and/or prevailing rates for such services in the Chicagoland area.*" (Emphasis added.)

This provision also **belies plaintiff's claim that the Firm was required to inform its clients that its investigator was a salaried employee as opposed to a third party.** Plaintiff has not cited any authority prohibiting such an agreement and does not address the fact that the Firm's clients agreed to much of the conduct of which he complains. "The law and the public policy of Illinois permit and require that competent parties be free to contract with one another." Liccardi v. Stolt Terminals Inc., 178 Ill. 2d 540, 549 (1997). "Parties to a contract are free to include any terms they choose, as long as those terms are not against public policy and do not contravene some positive rule of law." Green v. Safeco Life Insurance Co., 312 Ill. App. 3d 577, 581 (2000). "Public policy itself strongly favors freedom to contract." Holstein v. Grossman, 246 Ill. App. 3d 719, 726 (1993). Here, plaintiff has not alleged the Firm's agreements with its clients violate public policy or contravene a positive rule of law. It therefore cannot be said, under the unique facts of this case, that **it was patently improper or illegal for the Firm to bill its clients a prevailing rate for plaintiff's investigation services or fail to voluntarily disclose to the clients plaintiff's employment status and/or**

9

the actual costs of his services. Plaintiff's claims to the contrary are undermined by his pleading and were properly dismissed with prejudice.

Plaintiff also maintains defendants actively misled their clients and the court by requiring him to create invoices for his services that disguised he was a firm employee. Such conduct, while distasteful, is not manifestly illegal. Plaintiff may nevertheless succeed on his retaliatory discharge claim by showing that the Firm's termination of his employment for complaining about and refusing to participate in the Firm's alleged misconduct "violates a clear mandate of public policy." Barr, 106 Ill. 2d at 529. Plaintiff claims here that the Firm's conduct violated public policy by violating certain Illinois criminal statutes, the "citizen crime-fighter" exception to at-will employment, and the **Rules of Professional Conduct. We agree** with the trial court, however, that plaintiff's pleading does not support his claims of illegality. While "a plaintiff attempting to state a cause of action for retaliatory discharge after being fired for reporting possible illegal activity need not allege or prove conclusively the law has been violated in order to state a cause of action," he must have a good-faith belief that the defendant was violating the law. *Johnson v. World Color Press, Inc.*, 147 Ill. App. 3d 746, 751-52 (1986); accord *Mackie v. Vaughan Chapter-Paralyzed Veterans of America, Inc.*, 354 Ill. App. 3d 731, 740 (2004). It cannot be said here that a reasonable person could conclude on account of plaintiff's pleading that defendants' conduct was criminal.

As for the Rules, plaintiff alleges in a conclusory and unsupported fashion that defendants violated public policy by violating "the Rules of Professional Conduct which include[ ] but [are] not limited to the Preamble, Rule 1.4(b), Rule 8.4 and Rule 1.5." This court has held, albeit in a different context, that "where attorney conduct is at issue, we look to the supreme court rules for expressions of public

policy." *Richards v. SSM Health Care, Inc.*, 311 Ill. App. 3d 560, 564 (2000); accord *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 67 (2006) ("AMA Opinion 9.02, while informative, is not the equivalent of an Illinois statute or rule of professional conduct and, for that reason, does not provide a clear expression of the public policy of this state."); but see *Zeigler v. Illinois Trust & Savings Bank*, 245 Ill. 180, 193 (1910), and its progeny ("The public policy of the State or of the nation is to be found in its constitution and its statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of the government officials. [Citations.] Courts will not look to other sources to determine the public policy of a State. *** 'The public policy of a State or nation must be determined by its constitution, laws and judicial decisions, -- not by the varying opinions of laymen, lawyers or judges as to the demands of the interests of the public.' "). Nevertheless, the mere citation to the Rules will not alone state a retaliatory discharge claim. Cf. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 505 (2009) ("[T]he mere citation of a constitutional or statutory provision in a complaint will not, by itself, be sufficient to state a cause of action for retaliatory discharge. Rather, an employee must show that the discharge violated the public policy that the cited provision clearly mandates."). A plaintiff must specifically identify the clearly mandated public policy in the Rules that his termination allegedly violated. While plaintiff here claims that, "[t]he conduct of the Defendants is against public policy and because of their positions in society as attorneys whose duty is to uphold the law and act with scrupulous honesty and fidelity their firing Plaintiff for complaining about the conduct is actionable," this allegation, if construed as a policy statement, is insufficient. "Scrupulous honesty and fidelity" are too broad, too "general [a] statement of policy *** to justify finding an exception to the general rule of at-will employment." *Id.* at 502.

11

1-10-0643

As our supreme court has explained:

"The tort of retaliatory discharge 'seeks to achieve "a proper balance *** among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." ' [Citation.] In the absence of a clearly mandated public policy, 'the employer retains the right to fire workers at will.' [Citations.] A broad, general statement of policy is inadequate to justify finding an exception to the general rule of at-will employment. *Corbin v. Sinclair Marketing, Inc.*, 684 P.2d 265, 267 (Colo. App. 1984) (collecting cases). Indeed: 'Any effort to evaluate the public policy exception with generalized concepts of fairness and justice will result in an elimination of the at-will doctrine itself.' *Fitzgerald*, 613 N.W.2d at 283.

Further, generalized expressions of public policy fail to provide essential notice to employers. The phrase 'clearly mandated public policy' implies that the policy will be recognizable simply because it is clear. 'An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations.' [Citations.]

Accordingly, an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy. However, unless an employee at will identifies a 'specific' expression of public policy, the employee may be discharged with or without cause. [Citation.] For example, insufficient allegations

12

of public policy include 'right to marry' a coworker (*McCluskey v. Clark Oil & Refining Corp.*, 147 Ill. App. 3d 822, 825-26 (1986)); 'product safety' (*Geary v. United States Steel Corp.*, 456 Pa. 171, 183, 319 A.2d 174, 180 (1974)); 'promoting quality health care' (*Hrehorovich v. Harbor Hospital Center, Inc.*, 93 Md. App. 772, 796, 614 A.2d 1021, 1033 (1992)); and 'the Hippocratic Oath' (*Pierce*, 84 N.J. at 76, 417 A.2d at 514). Unless the employee identifies a clear mandate of public policy that is violated by the employee's discharge, the complaint will not state a cause of action for retaliatory discharge." *Turner*, 233 Ill. 2d at 502-03.

The Complaint here fails to state a cause of action. Although attorney **honesty and fidelity are vital to the legal system and a matter in the public interest**, we do not believe that a former law firm employee **can be immune from the general rule of at-will employment merely by complaining to the Firm and its attorneys prior to being fired about deceitful but seemingly legal billing practices he no longer wishes to participate in.** While we do not condone the Firm's alleged misconduct here, we are not persuaded that plaintiff's allegation of "honesty and fidelity" in the legal system satisfies the supreme court's "narrow definition of public policy" in retaliatory discharge cases. Id. at 507-08 (holding that, "[b]ased on the narrow scope of a retaliatory discharge action, the general concept of 'patient safety,' by itself, is simply inadequate to justify finding an exception to the general rule of at-will employment"). We affirm the dismissal of the Complaint.

## CONCLUSION

The trial court properly dismissed the Complaint for failure to state a retaliatory discharge claim. Plaintiff has not pled an exception to the general rule of at-will employment.

1-10-0643

Affirmed.

———