2022 IL App (1st) 211163-U

No. 1- 21-1163

September 30, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| GREGORY MAYER, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Plaintiff-Appellant, | ) | |
| | ) | No. 2020 L 011099 |
| v. | ) | |
| HOLLISTER INCORPORATED, | ) | The Honorable |
| an Illinois corporation, | ) | Daniel J. Kubasiak |
| | ) | Judge Presiding |
| Defendant-Appellant. | ) | |

JUSTICE WALKER delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

*Held:* The trial court erred granting the motion to dismiss where defendant failed to demonstrate that plaintiff's claims were barred by affirmative matters and no set of facts could entitle him to recover.

¶ 1     Plaintiff Gregory Mayer filed a complaint against his employer, Defendant Hollister Incorporated for violating the Illinois Whistleblower Act, retaliatory discharge, promissory estoppel, and fraudulent inducement. The trial court granted Hollister's motion to dismiss. Subsequently, Mayer filed an amended complaint. Hollister filed another motion to dismiss that

the trial court granted. Mayer appeals arguing the trial court erred in dismissing his complaints. For the following reasons we reverse.

¶ 2                                    I. BACKGROUND

¶ 3      Hollister employed Mayer as in-house intellectual property (IP) counsel in 2007. The Firm of John Dickinson Schneider, Inc. ("JDS") owns Hollister. KMT Medical Company ("KMT") is a sister company of Hollister owned by JDS as well. Mayer oversaw Hollister's patent litigation and served as head of the IP Law Team, where he was responsible for his team's budget.

¶ 4      In 2018, Mayer provided a proposed IP Law Team budget for the fiscal year 2019 to Hollister's General Counsel Tim Murphy. As General Counsel, Murphy was responsible for the entire Law Department's budget. On October 12, 2018, Murphy circulated the allocations for the different law teams. Murphy allocated $43,000 more to the IP team's budget than Mayer originally requested. On November 28, 2018, Murphy emailed Mayer regarding the budget which stated:

> "One additional thing: I 'upped' the IP Law Team's budget request to amount.
> (Instead of the requested amount), as a means to 'hide' or 'park' the additional $43k
> because I have no doubt other groups will need additional funds (SBUs for certain).
> I likewise have no doubt the IP Law Team will come well under the requested
> amount because of the various good practices of the team (e.g., RFPs, switching
> EU prosecution firms, carefully scrutinizing bills, etc.). Next year will definitely be
> a tight one, and I will not be surprised if budgets are reduced during 2019 itself.
> We'll work through it and figure it out, though, for sure."

¶ 5      In a follow-up email, Mayer stated he **was not** sure if Murphy's email was some "integrity test," indicating that they could not "hide" money in the IP budget and asked that the money be

removed from the IP team's budget. In a response email, Murphy stated that the email was not meant to be an integrity test but rather a means of opening up to the IP team about the "art" of budgeting. He also stated he spoke with Carolyn Sloane, the IP team's patent agent, about the additional $43,000 and that she understood the need to "juggle things overall in the department to make budgets work."

¶ 6    Mayer responded via email, citing Illinois Rules of Professional Conduct 8.4, the USPTO Rules of Professional Conduct Section 11.804, and Hollister's Code of Conduct. He explained that he did not have enough knowledge about corporate structure to know whether or not Murphy's initial email presented a violation of professional ethics, but he was "uncomfortable". Mayer claimed that the terms "hiding" or "parking" could be viewed as misrepresenting the budget numbers. He went on to state:

> "I believe that by reporting my concern to you, I have acted in a completely appropriate manner, and in accordance with Hollister's Code of Conduct. I do not think that I am, in your words on Friday, 'overreacting.' As I am sure is true for you regarding your law license, my Illinois law license and USPTO registration are extremely valuable to me, and not something I am willing to risk for purposes of being a 'Best-In-Class Teammate'. (I was really disappointed that you seem to be trying to 'flip' this situation, and my reaction to it, to be an example of me not being a 'team player') Anyway, integrity trumps 'team player' every time in my book."

¶ 7    Murphy acknowledged the email, forwarded it to Jim Adducci, General Counsel of JDS, Hollister's parent entity, and recused himself from the matter. Adduci initiated an investigation conducted by an outside law firm which concluded in January 2019. The investigation found that

Mayer was reasonable in raising his concerns that the hiding or parking of $43,000 violated IRPC Rule 8.4(c), 73 C.F.R. §11.804, and Hollister's Code of Conduct. Adducci also assured Mayer that he would not face any repercussions for raising his concerns.

¶ 8    In early 2019, the IP Law Team's paralegal retired. Murphy did not hire another paralegal for the team. Instead, he reassigned a paralegal with no IP experience from the commercial law team to the IP Law Team, which made Mayer responsible for paralegal work in addition to his other responsibilities. As a result, Mayer had less time to complete his duties, and Murphy began to reprimand Mayer for his performance. Murphy claimed that Mayer failed to take the initiative to obtain a competitor's product, properly investigate it for potential infringement on one of Hollister's patents and included that assertion in Mayer's 2019 midyear review. Mayer provided evidence to refute Murphy's claim, but Murphy refused to recant his statements.

¶ 9    On October 2, 2019, Mayer emailed Hollister's Chief HR Officer, stating:

"I think the foregoing conduct by Tim Murphy in connection with my [] mid-year review is in retaliation for my reporting a concern under the Code of Conduct in Q4 of 2019. I also have a concern that this conduct may be a violation of the Code of Conduct requirement that Hollister associates 'maintain records honestly and accurately,' and that it also may be a violation of the Illinois Rules of Professional Conduct, Rule 8.4(c)."

¶ 10    During a meeting with Murphy and Hollister's HR Director on October 7, 2019, Mayer's employment was terminated.

¶ 11    On October 16, 2020, Mayer filed suit against Hollister alleging: (1) violation of the Illinois Whistleblower Act; (2) retaliatory discharge; promissory estoppel; and (4) fraudulent inducement.

Hollister filed a motion to dismiss pursuant to 735 ILCS 5/2-615 and 2-619(a)(9), and attached affidavits from Jeffery Schiller, an attorney hired by JDS to investigate whether the allocation of the $43,000 was unlawful, and Amanda Brunner, Hollister's Assistant Treasurer and Senior Director.

¶ 12     Brunner declared that JDS was responsible for the final budgets for KMT and Hollister. Brunner also stated that the allocation of $43,000 would have no impact on JDS's taxes paid to the federal government.

¶ 13     Schiller declared that Murphy's conduct did not violate the Illinois Code of Professional Conduct, the UPTO Code of Professional Conduct, Hollister's Code of Conduct, or any other ethical duties. Schiller also found that Mayer committed no wrongdoing in reporting Murphy's conduct.

¶ 14     The court granted Hollister's motion to dismiss, finding that Mayer stated a sufficient claim to survive the section 2-615 motion as to Counts I and II, but dismissed those counts under section 2-619(a)(9), relying on declarations made by Hollister.

¶ 15     Mayer filed an amended complaint on April 27, 2021, and Hollister filed another motion to dismiss under sections 2-615 and 2-619(a)(9). Mayer filed a motion to strike and exclude the declarations made by Hollister. The trial court dismissed the amended complaint with prejudice without ruling on the motion to strike and exclude. Mayer now appeals.

¶ 16                                    II. ANALYSIS

¶ 17     On appeal, Mayer argues that the trial court erred in dismissing his complaint because (1) the complaint states a claim for violation of the Illinois Whistleblower Act; (2) alleges a valid retaliatory discharge claim; (3) alleges all elements of a fraudulent inducement claim; and (4)

alleges all elements of a promissory estoppel claim. Mayer raises several arguments that all hinge on the contention that the trial court based its ruling on false declarations made by Hollister.

¶ 18   Hollister filed a motion to dismiss under 735 ILCS 5/2-615 and 2-619(a)(9) (West 2018). A section 2–615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *City of Chicago v. Beretta U.S.A. Corp.,* 213 Ill.2d 351, 364, 821 N.E.2d 1099 (2004). We review orders granting a section 2-615 motion to dismiss *de novo*. A section 2-615 motion should not be granted unless it is apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Canel v. Topinka,* 212 Ill.2d 311, 318, 818 N.E.2d 311 (2004). When reviewing a motion granted under section 2-615, "we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. [Citation.] We also construe the allegations in the complaint in the light most favorable to the plaintiff." *Marshall v. Burger King Corp.*, 222 Ill. 2d at 429, 856 N.E.2d 1048 (2006).

¶ 19   Section 2–619(a)(9) of the Code provides a defendant may file a motion for dismissal of the action on the grounds that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2–619(a)(9) (West 2010). The purpose section 2–619(a) is to provide litigants with a method of disposing of issues of law and easily proved issues of fact—relating to the affirmative matter—early in the litigation. *Van Meter v. Darien Park District*, 207 Ill.2d 359, 367, 799 N.E.2d 273, 278 (2003). In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Ferguson v. City of Chicago*, 213 Ill.2d 94, 96–97, 820 N.E.2d 455 (2004). All well-pleaded facts in the complaint are taken as true and the reviewing court must determine whether the allegations in the complaint, when viewed in the light most favorable to the

plaintiff, establish a cause upon which relief may be granted. *King v. First Capital Financial Services Corp.*, 215 Ill.2d 1, 11–12, 828 N.E.2d 1155 (2005).

¶ 20                                    Whistleblower Act

¶ 21    To state a claim under the Illinois Whistleblower Act, plaintiffs must refuse to participate "in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20 (West 2014). Plaintiffs must also sufficiently allege that they refused to participate in the activity and that the activity violated a statute, rule, or regulation. *Roberts v. Bd. of Trustees of Cmty. Coll. Dist. N*o. 508, 2019 IL 123594, ¶ 42.

¶ 22    Mayer contends his refusal to accept the $43,000 satisfies both elements of the Whistleblower Act, and he is not required to prove that Hollister misused someone else's money. Specifically, Mayer alleges that the court relied on improper affirmative matters and focused on whether Hollister engaged in unlawful conduct rather than on the professional misconduct Mayer would engage in by accepting the $43,000. *Sardiga v. N. Tr. Co.*, 409 Ill. App. 3d 56, 62, 948 N.E.2d 652, 657 (1st Dist. 2011).

¶ 23    Hollister responds by arguing that Mayer's Whistleblower claim fails because Mayer could not have refused to participate in an activity that would violate State or federal law, rule, or regulation when he never had any control over the $43,000 in question. To support their argument, Hollister relies on the trial court order which stated:

> "This pleading failure alone demands dismissal of the claim with prejudice, because
> without pleading that the corporation misused the money of someone else Mayer
> cannot establish the second element of a Section 20 Whistleblower claim, that the
> refused activity 'would result in a violation of a State or federal, law, rule, or

regulation.' Here, Mayer appears to attempt to overcome this pleading failure by alleging that his acquiescence to Mr. Murphy's 'demand' to 'hide' the money would have caused Mayer's violation of IRPC 8.4(c) and 37 C.F.R. § 11.804(c) because it would entail Mayer "using the money" and "lying" to Hollister and its parent company about why $43,000 extra was in the internal IP Law Budget. Yet again, Mayer fails to plead that the $43,000 belonged to anyone other than the corporation. Thus, whether Mayer would have accepted, held, or used the $43,000 is irrelevant. These acts would not be conduct involving dishonesty, fraud, deceit, or misrepresentation under IRPC 8.4(c) and 37 C.F.R. § 11.804(c) because the $43,000 belonged to the corporation."

¶ 24   Dismissal under section 2–619(a)(9) is appropriate when an affirmative matter bar or defeats the plaintiff's claim. *Kedzie & 103rd Currency Exch., Inc. v. Hodge*, 156 Ill. 2d 112, 117, 619 N.E.2d 732, 735 (1993). "Affirmative matter" means some kind of defense "other than a negation of the essential allegations of the plaintiff's cause of action." *Id.*

¶ 25   The trial court dismissed Mayer's Whistleblower claim by finding Murphy, Schiller, and Brunner's affidavits asserted affirmative matters that supported a section 2-619 motion to dismiss. "Section 2–619(a)(9) does not authorize the defendant to submit affidavits or evidentiary matter for the purpose of contesting the plaintiff's factual allegations and presenting its version of the facts." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 34, 988 N.E.2d 984, 995 citing Smith, 231 Ill.2d at 121–22, 896 N.E.2d at 238–39. In *Reynolds,* plaintiff filed a seven-count complaint against defendants for injuries sustained from a motor vehicle accident. The trial court dismissed plaintiff's complaint pursuant to sections 2–615 and 2–619(a). This court

reversed four of the seven counts and affirmed the other three. The *Reynolds* court emphasized that defendants misused affidavits as affirmative matters to attempt to negate the essential elements of plaintiff's claim. *Id* at ¶ 53.

¶ 26    Here, the trial court reasoned that the affidavits demonstrated that Hollister's allocation of the funds was not illegal, and they did not ask Mayer to do anything with the $43,000. However, it is irrelevant whether the allocation of funds was illegal. Mayer's claim is that remaining complicit about the $43,000 being allocated to the IP Law Team budget would violate IRPC Rule 8.4(c) and 73 C.F.R. § 11.804. Murphy's and Brunner's affidavits did not address Mayer's actions but instead focused on Hollister. Schiller's affidavit demonstrates that he was hired to evaluate the conduct of Hollister, not Mayer, but we note Schiller found that Mayer was reasonable in reporting his concerns about budgeting. Similar to the affidavits in *Reynolds*, the affidavits here do not constitute affirmative matters to warrant a section 2-619 dismissal of count I.

¶ 27                              Retaliatory Discharge

¶ 28    Mayer also claims that the trial court erred in dismissing his retaliatory discharge claim. To establish a tort claim for retaliatory discharge, a plaintiff must show (1) she has been discharged, (2) in retaliation for her activities, and (3) the discharge violates a clear mandate of public policy. *Bajalo v. Northwestern University*, 369 Ill. App. 3d 576, 580, 860 N.E.2d 556 (2006). The requirement that the discharge be in retaliation for the plaintiff's activities requires a plaintiff establish a causal relationship between the plaintiff's activities and the discharge. *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill.2d 433, 443, 641 N.E.2d 395 (1994). When deciding the element of causation, the ultimate issue is the employer's motive in discharging the employee. *Clemons v. Mechanical Devices Co.*, 184 Ill.2d 328, 336, 704 N.E.2d 403 (1998).

"While there is no precise definition of what constitutes clearly mandated public policy, a review of Illinois case law reveals that retaliatory discharge actions have been allowed in two settings: where an employee is discharged for filing, or in anticipation of filing, a claim under the Workers' Compensation Act (820 ILCS 305/1 et seq. (West 1992)); or where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistleblowing.'" *Michael v. Precision All. Group, LLC,* 2014 IL 117376, ¶ 30, 21 N.E.3d 1183, 1188 (citing *Jacobson v. Knepper & Moga, P.C.*, 185 Ill.2d 372, 376, 706 N.E.2d 491 (1998)).

¶ 29     Here, Hollister's section 2-615 motion to dismiss the retaliatory discharge count was denied, but the section 2-619 motion to dismiss was granted. The court reasoned:

> "Murphy did not order Mayer to use any of the $43,000, nor did he direct Mayer to sign or certify an internal false document or to sign, certify, or file a false document with or make a representation to the federal government. Ultimately, the affirmative matter supported by the declarations Hollister attached to its memorandum show that Hollister did not ask Mayer to do anything relative to the $43,000 reallocation to the internal IP Law Budget and the use of the money that would have been illegal".

¶ 30     Mayer argues the trial court improperly accepted Hollister's declarations that he was never asked to do anything with the $43,000**,** and he could not reasonably believe a wrongdoing was occurring when a question of fact existed on the matter.

¶ 31     Hollister raises several arguments to support the trial court's dismissal of the retaliatory discharge claim. Hollister argues that (1) Mayer's claim is barred by an affirmative matter, (2) Mayer did not hold a reasonable belief that Murphy's conduct was illegal, (3) the amended

complaint pled insufficient facts to show that Hollister violated a matter of public policy, and (4) Mayer fails to show his discharge violated public policy.

¶ 32    Hollister cites *Rabin v. Karlin & Fleischer, LLC*, 409 Ill.App.3d 182 (1st Dist. 2011) to argue that Mayer was required to allege that Hollister's conduct was illegal. In *Rabin*, the plaintiff was employed as an investigator for a law firm. *Id.* at 183. The firm allegedly billed its clients $40 per hour for the plaintiff's work, but his actual wages were less than that. *Id.* The firm also instructed the investigator to create invoices so it would appear that he was not an employee. *Id.* The plaintiff alleged the firm's conduct amounted to fraud because they falsely characterized the expenses. *Id.* at 183–84. The plaintiff complained and was later fired. *Id.* at 183. Plaintiff argued that he had a reasonable belief that the firm's actions violated criminal statutes and the Rules of Professional Conduct, and he was fired for reporting his belief. *Id.* at 184.

¶ 33    This court held that it was not "patently improper or illegal for the firm to bill its clients a prevailing rate for plaintiff's investigation services or fail to voluntarily disclose to the clients, plaintiff's employment status and/or the actual costs of his services." *Id*. at 188. However, this court found that when attempting to state a cause of action for retaliatory discharge, a plaintiff is not required to allege **or prove** that the law was violated, but plaintiff must show a good-faith belief that the defendant was violating the law. *Id*. We find that our decision in *Rabin* does not necessarily foreclose Mayer's claim.

¶ 34    Hollister also directs us to *Ulm v. Memorial Medical Center*, 2012 IL App. (4th) 110421, where the trial court granted defendant's motion for summary judgment. In *Ulm*, the plaintiff alleged that she was discharged for refusing to continue to certify medical records in violation of accreditation standards. The *Ulm* court held that plaintiff "could not have violated a clearly

mandated public policy [...] because plaintiff, as operations manager of the health information department and its representative with respect to the hospital's accreditation, was *** responsible for bringing defendant into compliance with the regulations she complained defendant violated." *Id* at ¶ 23. In *Ulm*, plaintiff could not sustain a retaliatory discharge because she was obligated to report as part of her job duties. Hollister argues that under *Ulm, Mayer's* role as assistant general counsel dictates that this matter be resolved privately rather than justify the court's involvement.

¶ 35    Hollister cites *Johnson v. World Color Press, Inc.*, 147 Ill.App.3d 746, 748 (5th Dist. 1986). In *Johnson*, the plaintiff objected to company practices that he believed violated federal security laws. This court reasoned that public policy encouraged full disclosure, truthfulness, and accuracy, and an employee who voices objection to practices which he reasonably believes violate public policy should be protected from being discharged. *Id* at 750. The *Johnson* court also found it was unnecessary to prove that his employer violated federal security laws to succeed on a retaliatory discharge claim. *Id* 751. Hollister argues the *Johnson* decision demonstrates that a retaliatory discharge complaint is limited to an employee being discharged in retaliation for reporting the improper conduct of the employer or another employee.

¶ 36    In response, Mayer argues that *Johnson* supports his claim because he refused to participate in what he believed to be hiding extra money in his team's budget, contradicting the CEO's instructions barring reserves and Hollister's public-facing statements. We note that in *Johnson*, the court reversed the judgment dismissing the employee's complaint and remanded for further proceedings.

¶ 37    We find Hollister's arguments unpersuasive. Unlike the plaintiff in *Ulm*, Mayer did not have the authority to compel Hollister to comply with his IP budget concerns. Furthermore, Mayer

alleges that Hollister's conduct would cause him to violate his professional obligation, and just as the plaintiff in *Johnson*, Mayer is not required to allege that any law has been violated as long as Mayer had a reasonable and good faith belief that Murphy's actions were a violation of the law. The dispositive question is whether Mayer's conduct violate public policy. The record demonstrates that Mayer sought full disclosure and transparency regarding the additional $43,000. Mayer alleges that he was terminated because he questioned whether "hiding" the $43,000 in the IP budget. Therefore, we find that Mayer sufficiently alleged a retaliatory discharge, and the trial court erred in dismissing his claim.

¶ 38                                    Promissory Estoppel

¶ 39    To establish a claim for promissory estoppel, a plaintiff must show "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.,* 233 Ill.2d 46, 51, 906 N.E.2d 520 (2009) (citing **348 *444 *Quake Construction, Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 309–10, 565 N.E.2d 990 (1990)).

¶ 40    Mayer's promissory estoppel claim was dismissed under sections 2-615 and 2-619. Mayer argues the trial court's dismissal of his promissory estoppel claim was based on a misrepresentation of law and facts. The trial court reasoned that because Mayer's employment agreement indicates that he could "be terminated by either party any time," Mayer cannot satisfy the elements required to establish promissory estoppel. Mayer claims that his reliance on Hollister's 2015 Code of Conduct anti-retaliation promises was reasonable because later-formed employee policies create enforceable contract rights between the employer and employee, citing *Duldulao v. Saint Mary of*

*Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 491, 505 N.E.2d 314, 319 (1987). In *Duldulao*, our supreme court held that disciplinary procedures described in an employee handbook constituted a specific offer for a unilateral contract-the employer's promise in exchange for the employee's labor. *Id* at 490–91. This court narrowed the *Duldulao* holding in *Unterschuetz v. City of Chicago,* 346 Ill.App.3d at 73, 803 N.E.2d 988 (2004).

¶ 41    In *Unterschuetz*, an employee for the city claimed that the city ordinance regarding the powers of the personnel department constituted a contract. This court rejected the employee's claim and found the provisions expressed the goals of department personnel without granting specific rights to a city employee. *Id* at 72. The court found that unlike the promises in *Dulaulao* that were specific and contingent on the employee's work, the ordinances the employee relied on were less specific. *Id.* This court reasoned that when evaluating whether or not an employee handbook constitutes a specific offer for a unilateral contract, the "only relevant question to be raised with respect to a handbook is whether it makes contractual policies or sets out current working policies that are subject to change." *Id* at 73.

¶ 42    Hollister argues Mayer was already duty bound to report unethical conduct under IRPC 1.13 (b), therefore he could not have relied upon the Code of Conduct. IRPC 1.13 (b) states:

> "If a lawyer for an organization knows that an officer, employee or other person
>
> associated with the organization is engaged in action, intends to act or refuses to
>
> act in a matter related to the representation that is a violation of a legal obligation
>
> to the organization, or a crime, fraud or other violation of law that reasonably might
>
> be imputed to the organization, and that is likely to result in substantial injury to
>
> the organization, then the lawyer shall proceed as is reasonably necessary in the

best interest of the organization. Unless the lawyer reasonably believes that it is not necessary in the best interest of the organization to do so, the lawyer shall refer the matter to higher authority in the organization, including, if warranted by the circumstances, to the highest authority that can act on behalf of the organization as determined by law." IL R S CT RPC Rule 1.13.

¶ 43    The record demonstrates that Mayer was not sure Murphy's budget proposal email violated any rules, only that the email made him uncomfortable. Hollister has failed to identify any facts or cite any case law that would bar Mayer's entitlement to recovery.

¶ 44    Hollister does not dispute whether the 2015 Code of Conduct contains an anti-retaliation policy, but contends that the Code of Conduct that Mayer relies on does not change his 2007 employment agreement where he could be terminated at will. However, the same employment agreement indicates that a signed writing by Hollister's president could modify the agreement, and the president indeed signed the 2015 Code of Conduct.

¶ 45    Unlike the plaintiff in *Unterschuetz,* the provisions at issue here are more specific**.** At this stage in the litigation, we take Mayer's factual assertions as true. Mayer has alleged that his employment contract could be modified by a signed writing from Hollister's president, and the 2015 Code of Conduct signed by Hollister's president contained an anti-retaliation promise. Taking Mayer's allegations as true, it is clear Mayer reasonably relied on the 2015 Code of Conduct and was not bound to report Murphy's conduct. Therefore**,** we find the trial court committed an error by granting Hollister's motion to dismiss the promissory estoppel claim.

¶ 46                                Fraudulent Inducement

¶ 47    Finally, Mayer contends the trial court erred by dismissing his fraudulent inducement claim under sections 2-615 and 2-619. The elements of fraudulent inducement are (1) a false representation of material fact, (2) made with knowledge or belief of that representation's falsity, (3) made with the purpose of inducing another party to act or to refrain from acting, and (4) the other party reasonably relies upon the representation to its detriment. *Enterprise Recovery Systems, Inc. v. Salmeron,* 401 Ill.App.3d 65, 72, 927 N.E.2d 852 (2010). A plaintiff also has the burden of proving that plaintiff's reliance on misrepresentation was justifiable, which is determined by what the plaintiff knew at the time and any additional facts the plaintiff could have learned through the "exercise of ordinary prudence." *Village of Palatine v. Palatine Associates, LLC*, 2012 IL App (1st) 102707, ¶ 80

¶ 48    Mayer maintains that all the elements were met to withstand section 2-615 and section 2-619 dismissals. The trial court reasoned dismissal was warranted because Mayer failed "to identify a document that Mayer was fraudulently induced to sign because of Hollister's anti-retaliation policies." Mayer claims the 2015 Code of Conduct, his November 29, 2019 email to Murphy, and his October 2, 2019 email to Suzanne Erickson, Hollister's Chief HR Officer, all constitute documents that he was fraudulently induced to sign. The amended complaint also alleged that Erickson promised that Mayer would not suffer any retaliation.

¶ 49    We find the amended complaint is sufficient to survive dismissal. Mayer alleged that Hollister never had an anti-retaliation policy, and that Erickson promised he would not suffer any retaliation if he reported wrongdoings in response to a federal investigation into an alleged kickback scheme that resulted in a settlement agreement with the United States Department of Justice. Mayer claims that his reliance on the anti-retaliation policy caused damages resulting in

his termination. Hollister has not pled facts that demonstrate Mayer's claim is barred by an affirmative or demonstrate that no set of facts would entitle him to recovery. Hence, the trial court erred by dismissing Mayer's fraudulent inducement claim.

¶ 50    Based on the foregoing, we reverse the trial court's grant of Hollister's motion to dismiss.

¶ 51                                III. CONCLUSION

¶ 52    Viewing the facts alleged in the complaint in the light most favorable to Mayer and taking all well-pleaded facts and reasonable inferences drawn from those facts as true, we find the trial court erred by granting Hollister's motion to dismiss. We reverse the trial court's order dismissing Mayer's complaint under sections 2-615 and 2-619(a)(9), and remand for further proceedings.

¶ 53    Reversed and remanded.